UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HEAVENLY MARIE D.,

                Plaintiff,

v.                                                   5:20-CV-493
                                                         (TWD)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

OLINSKY LAW GROUP                      HOWARD OLINSKY, ESQ.
  *Counsel for Plaintiff*
250 South Clinton Street
Suite 250
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.           JAMES J. NAGELBERG, ESQ.
  *Counsel for Defendant*
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

       Heavenly Marie D. ("Plaintiff") brings this action against the Commissioner of Social Security ("Defendant" or the "Commissioner") pursuant to 42 U.S.C. § 405(g) seeking to vacate and remand a decision from the Commissioner that denied her request for disability benefits. (Dkt. No. 1.) In Defendant's decision, an Administrative Law Judge ("ALJ") found Plaintiff suffered from an intellectual disorder but retained the residual functional capacity ("RFC") to

perform a full range of work at all exertional levels but with certain non-exertional limitations. (Administrative Transcript[1] at 16, 21.)[2]  Therefore, the ALJ concluded Plaintiff was not disabled. *Id*. at 26.

Plaintiff primarily argues the ALJ who decided her claim improperly weighed the medical evidence and failed to consider her subjective complaints.  (Dkt. No. 14.)  Defendant contends substantial evidence supports the ALJ's decision and it should be upheld.  (Dkt. No. 18.)  After carefully reviewing the record and, for the reasons noted below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

## II.   DISCUSSION

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d. 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d. Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

As noted above, Plaintiff asserts substantial evidence does not support the ALJ's decision. (Dkt. No. 14.)  Specifically, she argues the ALJ failed to appropriately consider her treating physician's opinion.  To that end, Jennie Brown, M.D. found serious limitation in her

---

[1] The Administrative Transcript is found at Dkt. No. 13. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.

[2] Plaintiff filed for her initial claim of disability on December 28, 2016, when she was 21 years of age, and claimed she suffered from the following conditions: "ADHD, speech delay, can't do things on my own." T. at 67.

ability to "work in coordination with or proximity to others without being unduly distracted, ii) ask simple questions or request assistance, and iii) accept instructions and respond appropriately to criticism from supervisors." *Id*. at 17 (citing T. at 636). According to Plaintiff, the ALJ largely rejected Dr. Brown's opinion despite that Nurse Practitioner Karen Wickert's and LCSW Sue Gaskins's opinion related to her ability to interact with others and maintain full time work generally supported Dr. Brown's assessment. *Id*. (citations omitted).[3] Thus, Plaintiff asserts the ALJ's failure to afford more weight to Dr. Brown's opinion is legal error and resulted in an erroneous RFC that did not incorporate any social limitations. *Id*. at 14.

The Court disagrees and concludes the ALJ's review of the medical evidence was appropriate and substantial evidence supports Plaintiff's RFC. To be sure, the SSA prefers the medical opinions of a physician who is engaged in the primary treatment of a claimant. Thus, according to the relevant regulations, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)

---

[3] NP Wickert examined Plaintiff on January 30, 2017, for the Onondaga County Department of Social Services ("DSS") and filled out an "Examination for Employability Assessment" for Plaintiff that opined severe limitations in interacting with others and maintaining socially appropriate behavior without exhibiting behavior extremes. T. at 451-52. Ms. Gaskins, also with the DSS, was a non-examining source and provided an "Examination for Employability Assessment" that opined moderate limitations in maintaining socially appropriate behavior without exhibiting behavior extremes. T. at 459-60. Notably, there appear to be several different spellings of Ms. Gaskins's name. The Court relies on the spelling in typewritten records from ARISE Child & Family Service, Inc. for this spelling. T. at 487.

(holding "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. *See* 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess*, 537 F.3d at 129 (alteration in original) (quoting *Halloran*, 362 F.3d at 33). The failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

Here, Plaintiff's main contention is that the ALJ improperly weighed Dr. Brown's opinion that she is seriously limited in her ability to "work in coordination with or proximity to others without being unduly distracted, ii) ask simple questions or request assistance, and iii) accept instructions and respond appropriately to criticism from supervisors." (Dkt. No. 14 at 17 (citing T. at 636).) The ALJ, however, thoroughly considered Dr. Brown's opinions and properly afforded Dr. Brown's opinions less weight. T. at 24. Specifically, the ALJ addressed

4

all the necessary factors in assessing Dr. Brown's opinion. To that end, though he acknowledged Dr. Brown's long history treating Plaintiff, he correctly pointed out that Dr. Brown is not a specialist and her treatment never included a full mental status examination. T. at 24. The ALJ noted Dr. Brown's recorded clinical observations indicated that "many of [Plaintiff's] psychological dimensions [were] in normal limits." T. at 24. The record supports the ALJ's assessment as treatment notes from October 2014 through September 2018 generally document that Plaintiff was alert and orientated with normal mood, affect, behavior, judgment and thought content. *See* T. at 291, 295, 300, 373, 376, 380, 385, 390, 394, 399, 402, 407, 414, 494, 505, 521, 528, 535. The ALJ also concluded that Dr. Brown's opinion was inconsistent with Jeanne A. Shapiro Ph.D.'s examination and Plaintiff's reported activities of daily living. T. at 24; *see also* T. at 305-09 (Dr. Shapiro's opinion noting that "[v]ocationally, the claimant appears to have no limitations in understanding and following simple instructions and directions. She appears to have no limitations performing simple tasks. She appears to have mild-moderate limitations performing complex tasks. She appears to have no limitations maintaining attention and concentration for tasks . . . . She appears to have mild limitations regarding her ability to attend to a routine and maintain a schedule. She appears to have moderate limitations regarding her ability to learn new tasks. She appears to have no limitations regarding her ability to make appropriate decisions. She appears to be able to relate to and interact well with others. There appear to be no limitations regarding her ability to deal with stress."); T. at 41-43 (Plaintiff's testimony related to caring for her newborn child and cooking and preparing simple food).

  In sum, the Court is satisfied that the ALJ considered Dr. Brown's opinion as the regulations require and substantial evidence supports his assessment that it should be afforded limited weight.

Having concluded that the ALJ properly weighed the relevant medical opinion evidence, it follows that substantial evidence supports Plaintiff's RFC—specifically, his decision to not include any social limitations.  Importantly, as Defendant points out, the "RFC assessment adequately accounts for any social limitations Plaintiff has due to her impairments, as Plaintiff is limited to only simple, unskilled work."  (Dkt. No. 18 at 6.)  Though Plaintiff may disagree with the RFC, the ALJ properly weighed the medical evidence and devised an RFC that is consistent with that evidence.  It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 416.946(c).  It is not this Court's role to reweigh the evidence and come to a different conclusion.  *See Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting that "[i]t is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts . . . " (citation and internal punctuation omitted)).  Having considered the medical records, the Court finds substantial evidence supports Plaintiff's RFC.

Additionally, Plaintiff argues the ALJ's analysis failed to consider the nuance between her ability to *maintain* as opposed to *obtain* employment.  (Dkt. No. 14 at 18.)  The Court is not persuaded that the ALJ failed to consider Plaintiff's condition as it related to her ability to maintain work.  Contrary to Plaintiff's argument, the ALJ afforded some weight to Dr. Shapiro's assessment that Plaintiff's "psychiatric symptoms" would not significantly interfere with her ability to function "on a daily basis."  T. at 308.  The ALJ considered the factors set forth at 20 C.F.R. § 416.927(c)(1)-(6) in assessing Dr. Shapiro's medical opinion and explained why he accorded it some weight.  T. at 23.  Specifically, he noted Dr. Shapiro conducted a complete mental status exam and supported her opinion with examination findings; he also noted Dr. Shapiro's expertise in psychology and her familiarity with the Social Security Insurance

6

program. *Id*. In sum, the ALJ was entitled to rely on Dr. Shapiro's opinion—along with the other evidence—to craft the RFC and determine Plaintiff was able to not only obtain but maintain work.[4]

Finally, Plaintiff argues the ALJ failed to properly assess her subjective complaints. (Dkt. No. 14 at 20.) Specifically, she contends the ALJ placed undeserving emphasis on her daily activities but failed to consider that these activities were often done with loved ones or with aid and resulted in some uncontrolled anger. *Id*. at 21. Plaintiff also argued that her daily activities are not indicative of her ability to do work. *Id*.

Again, the Court disagrees. SSA regulations obligate an ALJ "to take the [plaintiff]'s reports of pain and other limitations into account, [but the ALJ] is not required to accept the [plaintiff]'s subjective complaints without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order) (alterations and internal quotation marks omitted) (quoting, *inter alia, Genier*, 606 F.3d at 49). "The ALJ will consider all of the available medical evidence, including a [plaintiff]'s statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285 (MKB), 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012) (summary order)). "To the extent that a [plaintiff]'s allegations of [a symptom] 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id*. (quoting *Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii))). Evaluation of symptoms (formerly credibility determinations) "must contain specific reasons for

---

[4] Although the Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians that arose from a single examination, *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990), a consultative physician's opinion may nonetheless constitute substantial evidence, *see Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (affirming ALJ reliance on findings of two consultative examiners in declining to afford treating physicians controlling weight).

the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Atwater v. Astrue*, No. 10-CV-420 (WMS), 2012 WL 28265, at *6 (W.D.N.Y. Jan. 5, 2012) (internal quotation marks and citation omitted), *aff'd*, 512 F. App'x 67 (2d Cir. 2013) (summary order).

      Here, substantial evidence supports the ALJ's assessment of her subjective complaints. The ALJ summarized Plaintiff's alleged symptoms and limitations including her reading difficulties, and speech problems, feeling uncomfortable in crowds, anger issues, anxiety and depression, trouble concentrating, and difficulty getting out of bed at times. T. at 22 (citing T. at 39-52 (Plaintiff's testimony)). The ALJ ultimately found her symptoms are not entirely consistent with the medical record. T. at 22. The ALJ discussed her overall positive response to medication and treatment, her mild to moderate mental conditions, and that she never required emergency medical care for her mental impairments. *Id*. (citing to T. at 292 (indicating her depression is improved on Zoloft); T. at 370-71 (indicating Zoloft improves depression and that Plaintiff "has been compliant with therapy [and] has had improved mood."); T. at 387 (noting "mood disorder" partially improved with medication)). Furthermore, the ALJ considered Plaintiff's admission that she was able to care for her baby, perform self-care, clean the house, cook simple things, play games on her phone, communicate by texting, write in her notebook, and do crafts to deal with anger. *Id*. (citing T. at 41-43 (Plaintiff's testimony regarding her daily activities)). As Defendant points out, the record is replete with evidence tending to suggest Plaintiff's conditions are not as serious as she reported in her hearing testimony. (Dkt. No. 18 at 18.) For example, Plaintiff experienced an improved mood with Zoloft and only "intermittent" mood irritability. *Id*. (citing T. at 387-88, 397, 400-01, 412). Plaintiff also ranked her

depression as low as "3" on a 10-point scale to her counselor and that her depression was doing better. *Id*. (citing T. at 418, 434.)

In sum, the ALJ carefully considered Plaintiff's subjective symptomology and substantial evidence supports his conclusion. Plaintiff's arguments in this regard again invite the Court to reweigh the evidence and second-guess the ALJ's conclusions related to her symptoms. However, the Court is not permitted to do so when the record demonstrates substantial evidence supports the ALJ's decision.

### III. CONCLUSION

In light of the foregoing, the Court finds substantial evidence supports the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and this case is **DISMISSED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 22, 2021
Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge